**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**SAN ANGELO DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| **RUBEN G. RENOVATO,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 6:04-CV-0022-C** |
| | § | |
| | § | |
| **JO ANNE B. BARNHART,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

<u>**REPORT AND RECOMMENDATION**</u>

**THIS MATTER** is before the court upon Plaintiff's complaint filed April 4, 2004, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's applications for a period of disability and disability insurance benefits and for supplemental security income benefits under Title II and Title XVI of the Social Security Act. Plaintiff filed a brief in support of his complaint on August 23, 2004, Defendant filed her brief on September 16, 2004, and Plaintiff filed his reply on September 29, 2004. The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this matter to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. This court, having considered the pleadings, the briefs, and the administrative record, recommends that the United States District Judge reverse the Commissioner's decision and remand this matter for further proceedings.

## I.    STATEMENT OF THE CASE

Plaintiff filed applications for a period of disability and disability insurance benefits and for supplemental security income benefits on July 29, 1999, alleging disability beginning January 1, 1995. Tr. 54, 104-07, 259-61. Plaintiff's applications were denied initially and upon reconsideration. Tr. 64-70, 74-77, 264-70, 272-74.   Plaintiff filed a Request for Hearing by Administrative Law Judge on April 21, 2000, and this matter came for hearing before the Administrative Law Judge ("ALJ") on January 31, 2001. Tr. 54, 78-79, 275-317.   Plaintiff, represented by a non-attorney, testified in his own behalf.  Tr. 279-98.  Plaintiff's wife, Margaret Renovato, also testified. Tr. 298-301.  Dr. John Murray, a medical expert ("ME"), and Carol Bennett, a  vocational expert ("VE"), appeared and testified as well.  Tr. 301-09, 309-15.  At the hearing, Plaintiff requested that his alleged onset date be amended to June 1, 1999.  Tr. 54.  The ALJ issued a decision unfavorable to Plaintiff on March 23, 2001. Tr. 51-60.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act.  He found that Plaintiff's earnings record showed that he has earned sufficient quarters of coverage to remain insured at least through December 31, 2004, and that Plaintiff had not engaged in substantial gainful activity at any time since June 1, 1999. Tr. 55, 59.  He found that Plaintiff has "severe" impairments, including diabetes and cervical disc disease.  *Id.*  He further found that Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1.  *Id.*  Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform his past relevant work or other work existing in the national economy. Tr. 55-58.

The ALJ found that Plaintiff could not return to his past relevant work as an exterminator or as a sander for a door and window manufacturer.  Tr. 55, 58, 59.

The ALJ found that Plaintiff retained the RFC for the full range of light work activity, limited to standing no more than four hours in an eight-hour workday and walking no more than two or three hours during the same period. The ALJ found that Plaintiff should avoid squatting, climbing, or balancing, and he should avoid prolonged exposure to heat (usually not over thirty minutes at a time). Tr. 59.  Having found that Plaintiff could not perform the full range of light work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite his severe impairments. Tr. 58. The ALJ relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in the national economy, including the jobs of outside delivery man or messenger, with 10,000 jobs in the state and 150,000 nationally; inspector or checker, with 5,000 jobs in the state and 75,000 nationally; and hand packer, with 5,000 jobs in the state and 70,000 jobs nationally. *Id.*  The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. Tr. 60.

Plaintiff submitted a Request for Review of Hearing Decision/Order on May 15, 2001.  Tr. 6.  The Appeals Council issued its opinion on February 20, 2004, indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision and denied Plaintiff's request. Tr. 4-5. The ALJ's decision, therefore, became the final decision of the Commissioner.

On April 14, 2004, Plaintiff commenced this action seeking judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.   STANDARD OF REVIEW

An individual may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g).  The court's review of a denial of disability benefits is

limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002)(citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity, which is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452. *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453. In this case, the ALJ found at step 5 that Plaintiff was not disabled because he retained the ability to perform work in the national economy. Tr. 59-60.

### III.   DISCUSSION

Plaintiff claims that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence because the ALJ improperly relied upon the testimony of the medical expert which was based on an incomplete medical record, failed to give the appropriate weight to the

opinions of Plaintiff's treating physicians, and failed to explain the weight given to Plaintiff's treating sources.

**A.     Whether the ALJ erred by improperly relying upon the testimony of the medical expert.**

Plaintif alleges that the ALJ improperly relied upon the testimony of the medical expert, which was based on an incomplete medical record, and failed to give appropriate weight to the opinions of Plaintiff's treating physicians.  Plaintiff further argues that the ALJ did not explain the weight given to the opinions of his treatment providers and failed to address and discuss the evidence in the record.

The ultimate issue is whether the ALJ's decision is supported by substantial evidence.  The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

In his opinion the ALJ noted that he had considered the additional medical evidence which was submitted after the hearing.  This evidence included medical records from La Esperanza Clinic dated March 6, 2001, through January 17, 2002, as well as physical therapy records for the period from August 28, 2000, through October 9, 2000.  *See* Tr. 8-41, 47-48, 54.  The ALJ further indicated that he relied upon the testimony of Dr. Murray in finding that Plaintiff has no impairment which has met or equaled the criteria of any impairment described in the Listing of Impairments.  Tr. 55.  The ALJ noted that in evaluating Plaintiff's residual functional capacity he "relied heavily upon the opinions of the impartial medical expert," finding his opinion "strongly supported by the evidence from the treating sources" and noting that it was "well-reasoned and persuasive."  Tr. 56.

The ALJ specifically noted Dr. Murray's conclusion that "there is no radiographic evidence of an impairment that would actually prevent Mr. Renovato from lifting his arms above shoulder

level." Tr. 56.   The ALJ accepted Dr. Murray's testimony that Plaintiff retained the residual functional capacity for light work, further limited to standing no more than ½ of an 8-hour day, walking no more than two or three hours of an 8-hour day, and avoiding squatting, climbing, and balancing. Tr. 57.  He also accepted Dr. Murray's testimony that sitting during a typical 8-hour day should not be a problem for Plaintiff.  *Id*.  In his opinion, the ALJ found that neither the objective medical evidence, the testimony of the claimant, the testimony of the ME, nor the rest of the evidence in the record established that Plaintiff's ability to function was so severely impaired as to preclude the exertional requirements of light work, as limited. Tr. 57.

The record demonstrates that the physical therapy records were submitted after the hearing but prior to issuance of the ALJ decision.  Tr. 249-58.  The record does not indicate that the ALJ submitted these additional records to the ME to provide the ME with the opportunity to determine if such additional evidence would result in a change in his opinion.

Plaintiff argues that the ALJ erred in ignoring the records of his treating physician and physical therapist, who both noted that Plaintiff had a frozen shoulder which limited the use and movement of his upper extremities. The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2).  On the other hand,  "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence."  *Newton*, 209 F.3d at 456.

The records from La Esperanza Clinic include a functional capacity questionnaire, dated November 17, 2002, apparently completed by Plaintiff's primary care physician. Tr. 8-11. This questionnaire indicated Plaintiff's complaints of swelling with walking. Tr. 8. It also indicated diminished sensation in the lower extremities. *Id*. The questionnaire also indicated that the patient had "no pain," and further indicates that the patient's experience of pain would "seldom" be severe enough to interfere with attention and concentration. Tr. 8-9. The questionnaire indicated the treating physician's opinion that Plaintiff could sit for at least six hours during an 8-hour workday, could sit more than two hours at a time, and could stand for less than two hours during an 8-hour workday, for 20 minutes at a time. Tr. 9. The questionnaire indicated that the patient needed to shift positions at will, and could bend and twist, each for 10% of an average workday. Tr. 10. It also indicated that Plaintiff could occasionally lift up to 10 pounds and did not need to lie down or rest at unpredictable intervals during an 8-hour workday. *Id*. The questionnaire concluded that Plaintiff would not have difficulty working at a regular full time job on a sustained basis, although indicating that Plaintiff should work at a "sedentary job only." Tr. 11.

The ALJ's RFC finding is not identical to the functional limitations noted by Plaintiff's treatment provider. Of course, "[a]mong the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.' These determinations are legal conclusions that the regulation describes as 'reserved to the Commissioner.'" *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003)(citing 20 C.F.R. § 404.1527(e)(1)). The physician's opinion that Plaintiff's could only perform "sedentary work" intrudes upon the province of the ALJ's determination of the RFC. The ALJ was required to consider the limitations imposed by Plaintiff's impairments as supported by substantial evidence in the record. The ALJ was not required to incorporate limitations into the hypothetical questions

presented to the VE that he did not find to be supported in the record.  *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).  The ALJ, as factfinder, also has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is  most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)(citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)).  The task of weighing the evidence is the province of the ALJ. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001).   The relative weight to be given these pieces of evidence is within the ALJ's discretion.  *Id.*

Plaintiff notes that the ALJ did not specifically refer to or discuss the evidence submitted after the hearing, including a functional assessment evaluation and notes of a physical therapist, Kaye Johanson, even though the ALJ did state that he considered this evidence. Tr. 54. The therapist was, of course, not a "treating physician" under the applicable regulations; the opinion of the licensed therapist is nevertheless entitled to consideration as evidence in the record.  *See* 20 C.F.R. § 404.1527(b).  Plaintiff points to the August 28, 2000, notations reflected in the treatment records of the physical therapist indicating that Plaintiff suffered from frozen shoulder that restricted the movement of his shoulders. In addition to her diagnosis of frozen shoulders, her notes indicated decreased strength and range of motion of both upper extremities and the cervical spine, pain, acute muscle spasms, and a decrease in functional activities.  Tr. 252-53.  Further records indicate that Plaintiff was discharged from physical therapy on October 9, 2000. Tr. 257.  Treatment notes indicate that Plaintiff reported bilateral shoulder pain, which increased after therapy.  *Id.*

The record demonstrates that John D. Hunt, M.D., a treating physician, indicated that upon examination on May 8, 2000, Plaintiff had decreased strength in both upper and lower extremities. Tr. 232.  Progress notes from La Esperanza Clinic, dated August 24, 2000,  indicate that Plaintiff had limited movement at the neck and at both shoulders. Tr. 240. The impression was of frozen

shoulder, and Plaintiff was prescribed physical therapy treatment.  Tr. 240-41.  La Esperanza Clinic progress notes from January 3, 2001, similarly indicate the impression of neck pain and frozen shoulders.  Tr. 236.

Plaintiff also testified that he had problems with his arms, being unable to raise them above his head. Tr. 288.  He testified to pain in his hands, shoulders, and neck, and indicated that he could not reach and get something out of a kitchen cabinet and needed assistance with dressing.  Tr. 290-91. He testified that he cannot vacuum or sweep because he cannot move his arms.  Tr. 292. Plaintiff also testified that he has problems sleeping on his sides because of the pain in his shoulders.  Tr. 293.  Plaintiff's wife testified that she helps Plaintiff with washing his hair, dressing him, and with other tasks that require use of the upper body. Tr. 299.

The ME testified that, although the record referred to upper extremity limitations, it was "not quantified as to how much."  Tr. 304. He also testified that the cervical MRI did not indicate an impairment that would prevent lifting of the arms above the shoulder.  Tr. 305. Upon examination by Plaintiff's representative, the ME further testified that an MRI may not demonstrate the exact area of the problem, that there was nothing in the record to specifically explain why Plaintiff was unable to raise either arm above shoulder level, and that there could possibly be some impairments that are not so demonstrated.  Tr. 308.

At the hearing, the ALJ stated that he saw "absolutely no evidence of any complaints of inability to raise his hands over his head." Tr. 315.  In his opinion, he specifically noted that the ME testified that there was no radiographic evidence of an impairment that would prevent Plaintiff from lifting his arms above shoulder level. Tr. 56. The ALJ specifically found that Plaintiff's "alleged inability to lift his arms above shoulder level was not supported by the objective medical evidence of record" and was, therefore, not entirely credible.  Tr. 57.

The record indicates that the medical records from La Esperanza Clinic which included the August 24, 2000, and January 31, 2001, references to Plaintiff's frozen shoulders was provided to the ALJ at the hearing. Tr. 236-48 (Ex. 9F). The record further indicates that Plaintiff's representative submitted the physical therapy records after the hearing and prior to issuance of the ALJ's decision. Tr. 249-58. The ALJ did not explain the weight given to the records and diagnoses of Plaintiff's treatment providers at La Esperanza Clinic, who opined that Plaintiff had frozen shoulders which caused him pain. He did not explain or discuss or even mention the weight given to the records and opinions of Plaintiff's physical therapist, a treating source, although not a treating physician. He did not discuss any of the evidence in the medical record which was consistent with Plaintiff's subjective complaints of limitation of use and motion of his upper extremities due to frozen shoulders. The ALJ relied primarily upon the testimony of the ME. The ME, however, also did not discuss or address the information in the record from Plaintiff's treatment providers that indicated a shoulder impairment or limitation in the use of his arms as a result of frozen shoulders. It appears that the ME may not have been provided with these records and the opportunity to amend his testimony.

The Fifth Circuit imposes a duty on an ALJ "to develop the facts fully and fairly relating to an applicant's claim for disability benefits. If the ALJ does not satisfy his duty, his decision is not substantially justified." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). The failure to fully and fairly develop the facts requires reversal if a claimant shows that he was prejudiced by such failure. *Id.* The claimant must show that if the ALJ had fully and fairly developed the facts, the claimant could and would have adduced evidence that might have altered the result. *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984).

I find that the ALJ did not develop the facts fully and fairly in this case. The ALJ did not sufficiently address the information in the medical record from Plaintiff's treating physician and other treatment providers indicating a shoulder impairment, did not indicate the weight given to such records and opinions, and relied instead upon the ME who apparently did not have this information before him at the time of his testimony.  It appears that the ME's testimony regarding Plaintiff's functional capacity was not based on his review of the full record.  If the ALJ had fully developed the facts regarding Plaintiff's shoulder impairment and the ME had been provided the records from the physical therapist, Plaintiff could and would have adduced evidence that *might* have altered the result.  Therefore, Plaintiff was prejudiced and this matter should be remanded.

Upon remand, the ALJ should evaluate and consider the evidence from Plaintiff's treatment providers indicating that he has a shoulder impairment which limits the use of his upper extremities, should indicate whether any limitations are imposed by Plaintiff's shoulder impairment, and should indicate the weight accorded to the opinions of Plaintiff's treating physician in accordance with 20 C.F.R. § 404.1527(d)(2) and *Newton*, 209 F.3d at 456.

## IV.   CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States District Judge reverse the Commissioner's decision and remand this matter for further proceedings in accordance with this recommendation.

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties.  Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within ten days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being

made.  The District Court need not consider frivolous, conclusory, or general objections.  A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court.   *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472 (1985).  Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United States Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

        DATED this 2nd day of September, 2005.


                                        **PHILIP R. LANE**
                                        **UNITED STATES MAGISTRATE JUDGE**